# Rutherford v. Shell Gas Station, et al.
# Case No. 5:18-cv-01123-ODW-RAO

# EXHIBITS
# IN SUPPORT OF DEFENDANTS COASTLINE
# PARTNERS, LLC AND GETTY LEASING,
# INC.'S MOTION FOR SUMMARY JUDGMENT

**Table of Contents:**

Exhibit 1 – Site Accessibility Evaluation, Americans with Disabilities Act and Title 24 And Part 2 - California Building Code, 2646 E Alessandro Boulevard, Riverside, CA 92508 ------------------------------- 1

Exhibit 2 – Order Granting Defendants' Motion for Summary Judgment, *Langer v. Chavez,* 2018 U.S. Dist. LEXIS 121856 (C.D. Cal. April 2018) -------------------------------------------------------------------39

# EXHIBIT 1

Exhibit 1

1

# Site Accessibility Evaluation

## Americans with Disabilities Act
## And
## Title 24 And Part 2 - California Building Code



**Alessandro Shell**

**2646 E Alessandro Blvd
Riverside, CA 92508**

**CASp Evaluation**

*Inspection Date: 08/14/2018*
*Inspector: Craig Lobnow*

**Prepared By**



**(833) 776 - 2277
ProCASp.com**

Eric Dransfield - Shell Gas
2646 E. Alessandro Blvd.
Riverside, CA, 92508
08/20/2018

Dear Eric,

Thank you for the opportunity to be of service to you by performing an accessibility evaluation for the Alessandro Shell located at 2646 E Alessandro Blvd, Riverside, CA, 92508. The facility was reinspected on 08/14/2018.

The ADA applies to this property because it is a public accommodation as defined in the Department of Justice's regulations implementing title III. 28 C.F.R. §36.104. Title III of the ADA requires that, as a place of public accommodation, the property owner is required to remove architectural barriers in existing facilities where such removal is readily achievable. 28 C.F.R. §36.304(a). Title III of the ADA requires that, as a place of public accommodation, the property owner should take measures to provide access to those areas of a place of public accommodation where goods and services are made available to the public. 28 C.F.R. 36.304(c)(2). Title III of the ADA also requires that, as a place of public accommodation, the property owner should take any other measures necessary to provide access to the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation. 28 C.F.R. §36.304(c)(4).

In the event that the property owner can demonstrate that barrier removal is not readily achievable, he must make his goods, services, facilities, privileges, advantages, or accommodations available through alternative methods, if those methods are readily achievable. 28 C.F.R. §36.305(a). The term readily achievable has been defined as "easily accomplishable and able to be carried out without much difficulty or expense".

The Department of Justice states that a place of public accommodation shall remove barriers that are readily achievable even when no alterations or renovations are planned. The Department of Justice recommends that a public accommodation develop an implementation plan designed to achieve compliance with ADA barrier removal requirements. Such a plan, if appropriately designed and executed, could serve as evidence of a good faith effort to comply with the ADA barrier removal requirements.

Please note that no readily achievable analysis was included as a part this report. In addition, as a complete history of construction including all alterations or additions was not available, this report is based on compliance with the most recent state and federal requirements. When there is a discrepancy between the 2010 ADAS (federal) and 2016 California Building Code (state), the more restrictive requirements are applied.

Periodic maintenance to ensure continued accessibility is essential in providing a safe and usable environment. Parking lot markings, signage, door opening pressures, and maintaining clear floor space at doors and other elements and fixtures, available to the public, must be part of an ongoing maintenance schedule.

Exhibit 1

3

Sincerely,

Craig Lobnow, CASp #634

Exhibit 1

4

**Findings** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

   **Parking & Exterior** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

   **Store Area** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

   **Restrooms** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**California Notice to Private Property Owner/Tenant** . . . . . . . . . . . . . . . . . . . . . . 28

**DOJ ADA Tax Incentives for Businesses** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

**Common Questions: Readily Achievable Barrier Removal** . . . . . . . . . . . . . . . . . 30

Exhibit 1

5

## Parking & Exterior

### Finding: 1

**The tow-away sign is missing.**

**There must be a tow-away sign posted in a conspicuous place at each entrance, or immediately adjacent to each space. The sign shall not be less than 17 inches by 22 inches in size with 1 inch high minimum lettering which clearly and conspicuously states the following:**

**Unauthorized vehicles parked in designated accessible spaces not displaying distinguishing placards or special license plates issued for persons with disabilities will be towed away at owner's expense.**
**Towed vehicles may be reclaimed at_____or by telephoning_____.**

**Blank spaces are to be filled in with appropriate information as a permanent part of the sign.**

*2016 CBC 11B Section 11B-502.8*
*An additional sign shall be posted either; 1) in a conspicuous place at each entrance to an off-street parking facility or 2) immediately adjacent to on-site accessible parking and visible from each parking space.*

### Citation:

**2016 CBC 11B Section: 11B-502.8**

UNAUTHORIZED VEHICLES PARKED
IN DESIGNATED ACCESSIBLE
SPACES NOT DISPLAYING
DISTINGUISHING PLACARDS OR
SPECIAL LICENSE PLATES ISSUED
FOR PERSONS WITH DISABILITIES
WILL BE TOWED AWAY
AT THE OWNER'S EXPENSE

TOWED VEHICLES
MAY BE RECLAIMED AT
(Insert Address)

OR BY TELEPHONING
(Insert Telephone Number)

## Parking & Exterior

## Finding: 2

An accessible parking stall, and access aisle, should be located in the parking area for the smog station.

*2016 CBC 11B Section Recommended*
*None*

*2010 ADAS Section Recommended*
*None*

**Citation:**

**2016 CBC 11B Section: Recommended**

**2010 ADAS Section: Recommended**



**ProCASp**
**(833) 776 - 2277**

**ProCASp.com**
*Powered by BlueDAG*

**6 of 37**
Exhibit 1

7

**Finding #2 Additional Finding Photos**



*ProCASp*
*(833) 776 - 2277*

*ProCASp.com*
*Powered by BlueDAG*

*7 of 37*
Exhibit 1

8

*Alessandro Shell - 2646 E Alessandro Blvd Riverside, CA 92508*

## Parking & Exterior

### Finding: 3

The term "handicapped" has been considered by the State of California as derogatory and should not be used. In this case the word could be removed and the sign would have the same meaning because the International Symbol of Accessibility (ISA) is included on the sign. When necessary use disabled or accessible to describe a feature or person.

A disability is a condition caused by an accident, trauma, genetics or disease which may limit a person's mobility, hearing, vision, speech or mental function. Some people have more than one disability.

A handicap is physical or attitudinal constraint that is imposed upon a person, regardless of whether that person has a disability. A set a stairs would be a handicap for a person with a disability who uses a wheelchair.

*2016 CBC 11B Section Recommended*
*None*

### Citation:

**2016 CBC 11B Section: Recommended**



**ProCASp**
**(833) 776 - 2277**

**ProCASp.com**
*Powered by BlueDAG*

**8 of 37**
Exhibit 1
9

**Finding #3 Additional Finding Photos**



*ProCASp*
*(833) 776 - 2277*

*ProCASp.com*
*Powered by BlueDAG*

*9 of 37*
Exhibit 1

10

*Alessandro Shell - 2646 E Alessandro Blvd Riverside, CA 92508*

## Parking & Exterior

### Finding: 4

**The curb ramp side flares are too steep.**

**The sides of curb ramps (curb ramp flares) where provided, shall not be steeper than 1:10.**

*2016 CBC 11B Section 11B-406.2.2*
*Where provided, curb ramp flares shall not be steeper than 1:10.*

*2010 ADAS Section 406.1*
*Curb ramps on accessible routes shall comply with 406, 405.2 through 405.5, and 405.10.*

### Citation:

**2016 CBC 11B Section: 11B-406.2.2**

**2010 ADAS Section: 406.1**





ProCASp
(833) 776 - 2277

ProCASp.com
*Powered by BlueDAG*

*10 of 37*

Exhibit 1

11

**Finding #4 Additional Finding Photos**



**ProCASp**
**(833) 776 - 2277**

**ProCASp.com**
*Powered by BlueDAG*

*11 of 37*
Exhibit 1
12

*Alessandro Shell - 2646 E Alessandro Blvd Riverside, CA 92508*

## Parking & Exterior

### Finding: 5

The UHaul boxes are too high.

**Where a clear floor or ground space allows a parallel or front approach and the side reach is unobstructed, the high side reach shall be 48 inches maximum above the finish floor or ground and the low side reach shall be 15 inches minimum above the finish floor or ground.**

*2016 CBC 11B Section 11B-308.2.1*
*Where a forward reach is unobstructed, the high forward reach shall be 48 inches (1219 mm) maximum and the low forward reach shall be 15 inches (381 mm) minimum above the finish floor or ground.*

*2016 CBC 11B Section 11B-308.3.1*
*Where a clear floor or ground space allows a parallel approach to an element and the side reach is unobstructed, the high side reach shall be 48 inches (1219 mm) maximum and the low side reach shall be 15 inches (381 mm) minimum above the finish floor or ground.*

*2010 ADAS Section 308.2.1*
*Where a forward reach is unobstructed, the high forward reach shall be 48 inches (1220 mm) maximum and the low forward reach shall be 15 inches (380 mm) minimum above the finish floor or ground.*

*2010 ADAS Section 308.3.1*
*Where a clear floor or ground space allows a parallel approach to an element and the side reach is unobstructed, the high side reach shall be 48 inches (1220 mm) maximum and the low side reach shall be 15 inches (380 mm) minimum above the finish floor or ground.*

### Citation:

**2016 CBC 11B Section: 11B-308.2.1, 11B-308.3.1**

**2010 ADAS Section: 308.2.1, 308.3.1**





Considered
Unobstructed

ProCASp
(833) 776 - 2277

ProCASp.com
*Powered by BlueDAG*

*12 of 37*
Exhibit 1
13

**Finding #5 Additional Finding Photos**



*ProCASp*
*(833) 776 - 2277*

*ProCASp.com*
*Powered by BlueDAG*

*13 of 37*
Exhibit 1

14

**Alessandro Shell - 2646 E Alessandro Blvd Riverside, CA 92508**

## Store Area

### Finding: 6

The tactile EXIT sign is missing at the door.

Wall signs identifying exits shall have characters raised 1/32 inch minimum and shall be uppercase characters a minimum of 5/8 inch and a maximum of 2 inches high. Braille shall be placed directly below the tactile characters; flush left or centered. Signs shall be located a minimum of 48 inches above the floor, measured from the baseline of the lowest tactile characters and 60 inches maximum above the finish floor or ground surface, measured from the baseline of the highest tactile characters.

Where a tactile sign is provided at a door, the sign shall be located on the latch side. Where a tactile sign is provided at double doors the sign shall be located to the right of the right-hand door. Where there is no wall space at the latch side of a single door or at the right side of double doors, signs shall be located on the nearest adjacent wall.

*2010 ADAS Section 216.4.1*
*Doors at exit passageways, exit discharge, and exit stairways shall be identified by tactile signs complying with 703.1, 703.2, and 703.5.*

### Citation:

**2010 ADAS Section: 216.4.1**




**ProCASp**
**(833) 776 - 2277**

**ProCASp.com**
*Powered by BlueDAG*

**14 of 37**
Exhibit 1

15

**Finding #6 Additional Finding Photos**



**ProCASp**
**(833) 776 - 2277**

**ProCASp.com**
*Powered by BlueDAG*

*15 of 37*
Exhibit 1
16

*Alessandro Shell - 2646 E Alessandro Blvd Riverside, CA 92508*

## Restrooms

### Finding: 7

**For both restrooms, the door operating hardware is not accessible.**

**Hand-activated door/gate opening hardware, handles, pulls, latches, locks, and other operating devices on accessible doors shall have a shape that is easy to grasp with one hand and does not require tight grasping, tight pinching or twisting of the wrist to operate. Hardware shall be 34 inches minimum and 48 inches maximum above the finish floor or ground.**

*2010 ADAS Section 404.2.7*
*Handles, pulls, latches, locks, and other operable parts on doors and gates shall comply with 309.4. Operable parts of such hardware shall be 34 inches (865 mm) minimum and 48 inches (1220 mm) maximum above the finish floor or ground.  Where sliding doors are in the fully open position, operating hardware shall be exposed and usable from both sides.*

### Citation:

**2010 ADAS Section: 404.2.7**





Lever      Panic Bar      Loop Handle

**Operating hardware must be centered between 34" and 48" above the floor or ground**

**ProCASp**
**(833) 776 - 2277**

ProCASp.com
*Powered by BlueDAG*

**16 of 37**
Exhibit 1
17

*Alessandro Shell - 2646 E Alessandro Blvd Riverside, CA 92508*

**Finding #7 Additional Finding Photos**





*ProCASp*
*(833) 776 - 2277*

*ProCASp.com*
*Powered by BlueDAG*

*17 of 37*
Exhibit 1

18

*Alessandro Shell - 2646 E Alessandro Blvd Riverside, CA 92508*

## Restrooms

## Finding: 8

Knee clearance and toe clearance can not be provided at a pedestal sink.

The knee clearance, measured from the bottom of the apron or the outside bottom edge of the lavatory, must be 29 inches reducing to 27 inches at a point located 8 inches back from the front edge and continuing to 11 inches minimum in depth at 9 inches above the floor. The top of the lavatory rim may be no higher than 34 inches. Toe clearance space under an element is located between the finish floor or ground and 9 inches above the finish floor or ground.

*2016 CBC 11B Section 11B-306.1*
*Where space beneath an element is included as part of clear floor or ground space or turning space, the space shall comply with Secrion 11 B-306. Additional space shall not be prohibited beneath an element but shall not be considered as part or the clear floor or ground space or turning space.*

### Citation:

**2016 CBC 11B Section: 11B-306.1**




ProCASp
(833) 776 - 2277

ProCASp.com
*Powered by BlueDAG*

*18 of 37*
Exhibit 1
19

**Finding #8 Additional Finding Photos**



*ProCASp*
*(833) 776 - 2277*

*ProCASp.com*
*Powered by BlueDAG*

*19 of 37*
Exhibit 1
20

*Alessandro Shell - 2646 E Alessandro Blvd Riverside, CA 92508*

## Restrooms

### Finding: 9

**The lavatory is too close to the side wall.**

**There must be a minimum of 18 inches from the centerline of the lavatory to the nearest side wall or side partition to allow for an unobstructed 30 inches by 48 inches clear floor space.**

*2016 CBC 11B Section 11B-606.6*
*Lavatories, when located adjacent to a side wall or partition, shall be a minimum of 18 inches (457 mm) to the centerline of the fixture.*

### Citation:

**2016 CBC 11B Section: 11B-606.6**





ProCASp
(833) 776 - 2277

ProCASp.com
*Powered by BlueDAG*

*20 of 37*
Exhibit 1
21

*Alessandro Shell - 2646 E Alessandro Blvd Riverside, CA 92508*

## Restrooms

### Finding: 10

**The dispenser's are too high off the floor.**

**Dispensers in restrooms must have operable parts a maximum of 40 inches above the floor.**

*2016 CBC 11B Section 11B-603.5*
*Where towel or sanitary napkin dispensers, waste receptacles, or other accessories are provided in toilet facilities, at least one of each type shall be located on an accessible route. All operable parts, including coin slots, shall be 40 inches ( 1016 mm) maximum above the finish floor.*

### Citation:

**2016 CBC 11B Section: 11B-603.5**




ProCASp
(833) 776 - 2277

ProCASp.com
*Powered by BlueDAG*

*21 of 37*
Exhibit 1
22

*Alessandro Shell - 2646 E Alessandro Blvd Riverside, CA 92508*

**Finding #10 Additional Finding Photos**





*ProCASp*
*(833) 776 - 2277*

*ProCASp.com*
*Powered by BlueDAG*

*22 of 37*
Exhibit 1

23

**Finding #10 Additional Finding Photos**





*ProCASp*
*(833) 776 - 2277*

*ProCASp.com*
*Powered by BlueDAG*

*23 of 37*
Exhibit 1
24

## Restrooms

## Finding: 11

**In the men's restroom, the flush handle is located on the wrong side of the toilet.**

**Controls shall be operable with one hand and shall not require tight grasping, pinching or twisting. Controls for the flush valves shall be mounted on the wide side of toilet areas, no more than 48 inches above the floor.**

*2010 ADAS Section 604.6*
*Flush controls shall be hand operated or automatic.  Hand operated flush controls shall comply with 309. Flush controls shall be located on the open side of the water closet except in ambulatory accessible compartments complying with 604.8.2.*

### Citation:

**2010 ADAS Section: 604.6**





**Transfer side**

ProCASp
(833) 776 - 2277

ProCASp.com
*Powered by BlueDAG*

*24 of 37*
Exhibit 1
25

**Finding #11 Additional Finding Photos**



*ProCASp*
*(833) 776 - 2277*

*ProCASp.com*
*Powered by BlueDAG*

*25 of 37*
Exhibit 1
26

## Restrooms

### Finding: 12

**In the women's restroom, the toilet seat cover dispenser is mounted too high and is not located in an accessible location.**

**Dispensers must have all operable parts a maximum of 40 inches above the floor and must be provided on an accessible route. Do not locate accessories above grab bars are within 1-1/2 inches of the side of grab bars.**

*2016 CBC 11B Section 11B-603.5*
*Where towel or sanitary napkin dispensers, waste receptacles, or other accessories are provided in toilet facilities, at least one of each type shall be located on an accessible route. All operable parts, including coin slots, shall be 40 inches ( 1016 mm) maximum above the finish floor.*

**Citation:**

**2016 CBC 11B Section: 11B-603.5**





Considered
Unobstructed

ProCASp
(833) 776 - 2277

ProCASp.com
*Powered by BlueDAG*

26 of 37
Exhibit 1
27

*Alessandro Shell - 2646 E Alessandro Blvd Riverside, CA 92508*

**Finding #12 Additional Finding Photos**



*ProCASp*
*(833) 776 - 2277*

*ProCASp.com*
*Powered by BlueDAG*

*27 of 37*
Exhibit 1

28

## <u>NOTICE TO PRIVATE PROPERTY OWNER/TENANT:</u>

YOU ARE ADVISED TO KEEP IN YOUR RECORDS ANY WRITTEN INSPECTION REPORT AND ANY OTHER DOCUMENTATION CONCERNING YOUR PROPERTY SITE THAT IS GIVEN TO YOU BY A CERTIFIED ACCESS SPECIALIST. IF YOU BECOME A DEFENDANT IN A LAWSUIT THAT INCLUDES A CLAIM CONCERNING A SITE INSPECTED BY A CERTIFIED ACCESS SPECIALIST, YOU MAY BE ENTITLED TO A STAY (TEMPORARY STOPPAGE) OF THE CLAIM AND AN EARLY EVALUATION CONFERENCE. IN ORDER TO REQUEST THE STAY AND EARLY EVALUATION CONFERENCE, YOU WILL NEED TO VERIFY THAT A CERTIFIED ACCESS SPECIALIST HAS INSPECTED THE SITE THAT IS THE SUBJECT OF THE CLAIM. YOU WILL ALSO BE REQUIRED TO PROVIDE THE COURT AND THE PLAINTIFF WITH THE COPY OF A WRITTEN INSPECTION REPORT BY THE CERTIFIED ACCESS SPECIALIST, AS SET FORTH IN CIVIL CODE SECTION 55.54. THE APPLICATION FORM AND INFORMATION ON HOW TO REQUEST A STAY AND EARLY EVALUATION CONFERENCE MAY BE OBTAINED AT http://www.courtinfo.ca.gov/selfhelp. YOU ARE ENTITLED TO REQUEST, FROM A CERTIFIED ACCESS SPECIALIST WHO HAS CONDUCTED AN INSPECTION OF YOUR PROPERTY, A WRITTEN INSPECTION REPORT AND OTHER DOCUMENTATION AS SET FORTH IN CIVIL CODE SECTION 55.53. YOU ARE ALSO ENTITLED TO REQUEST THE ISSUANCE OF A DISABILITY ACCESS INSPECTION CERTIFICATE, WHICH YOU MAY POST ON YOUR PROPERTY.

**This report has been issued in compliance with California Civil Code Section 55.53 and does NOT comply with all applicable construction related accessibility standards. A "Inspected by a CASp" classification has been determined as defined in California Civil Code Section 55.52 (a) 5. A reasonable time frame for completing items noted in this report will be determined by the property owner, tenant, or both and provided to ProCASp to be incorporated into an updated document.**

**Prepared by: Craig Lobnow, CASp #634**
**Inspection Certificate #: Pending**
**This document is valid only if wet signed by the preparer**

**Craig Lobnow, ProCASp**

**Date: 08/14/2018**

Exhibit 1

29

**U.S. Department of Justice**
Civil Rights Division
*Disability Rights Section*



## Expanding Your Market



**ADA Business Connection**

More than fifty million Americans with disabilities make up a huge, nearly untapped market for businesses of all types and sizes. To help businesses welcome customers with disabilities, the IRS offers two tax incentives to remove access barriers.

**For more information about these tax incentives and the ADA, call the Department of Justice ADA Information Line at:**
**800-514-0301 (voice)**
**800-514-0383 (TTY)**
or visit the *ADA Business Connection* at:
**www.ada.gov.**

# Tax Incentives for Businesses

Businesses can take advantage of two Federal tax incentives available to help cover costs of making access improvements for customers with disabilities:

- **A tax credit for small businesses** who remove access barriers from their facilities, provide accessible services, or take other steps to improve accessibility for customers with disabilities
- **A tax deduction for businesses of all sizes** that remove access barriers in their facilities or vehicles

A business that annually incurs eligible expenses to bring itself into compliance with the ADA may use these tax incentives every year. The incentives may be applied to a variety of expenditures; however, they may not be applied to the costs of new construction. All barrier removal must comply with applicable Federal accessibility standards.

### Tax Credit
Small businesses with 30 or fewer employees or total revenues of $1 million or less can use the Disabled Access Credit (Internal Revenue Code, Section 44). Eligible small businesses may take a credit of up to $5,000 (half of eligible expenses up to $10,250, with no credit for the first $250) to offset their costs for access, including barrier removal from their facilities (e.g., widening a doorway, installing a ramp), provision of accessibility services (e.g., sign language interpreters), provision of printed material in alternate formats (e.g., large-print, audio, Braille), and provision or modification of equipment.

### Tax Deduction
Businesses of all sizes may take advantage of this tax deduction. Under Internal Revenue Code, Section 190, businesses can take a business expense deduction of up to $15,000 per year for costs of removing barriers in facilities or vehicles.

### Tax Incentives in Combination
These two incentives can be used together by eligible businesses if the expenditures qualify under both Sections 44 and 190. If a small business' expenses exceed $10,250 for the maximum $5,000 tax credit, then the deduction equals the difference between the total spent and the amount of the credit claimed.

---

### Tax Incentives Forms and Publications

Visit the Internal Revenue Service website at www.irs.gov
or call 800-829-3676 (voice); 800-829-4059 (TTY)
to order the necessary business forms and publications:
**Form 8826** (Disabled Access Credit)
and **Publication 535 "Business Expenses"** (tax deduction).

November 2005

# Common Questions: Readily Achievable Barrier Removal

The ADA requires companies providing goods and services to the public to take certain limited steps to improve access to existing places of business. This mandate includes the obligation to remove barriers from existing buildings when it is readily achievable to do so. Readily achievable means easily accomplishable and able to be carried out without much difficulty or expense.

Many building features that are common in older facilities such as narrow doors, a step or a round door knob at an entrance door, or a crowded check-out or store aisle are barriers to access by people with disabilities. Removing barriers by ramping a curb, widening an entrance door, installing visual alarms, or designating an accessible parking space is often essential to ensure equal opportunity for people with disabilities. Because removing these and other common barriers can be simple and inexpensive in some cases and difficult and costly in others, the regulations for the ADA provide a flexible approach to compliance. This practical approach requires that barriers be removed in existing facilities only when it is readily achievable to do so. The ADA does not require existing buildings to meet the ADA's standards for newly constructed facilities.

The ADA states that individuals with disabilities may not be denied the full and equal enjoyment of the "goods, services, facilities, privileges, advantages, or accommodations" that the business provides -- in other words, whatever type of good or service a business provides to its customers or clients. A business or other private entity that serves the public must ensure equal opportunity for people with disabilities. In the following section, the US Department of Justice answers some of the most commonly asked questions about the barrier removal requirement and how it differs from those requirements that apply to new construction and alteration of buildings.

***I own three buildings, two of which were designed and constructed prior to the enactment of the ADA. I have been told I have to make them all accessible. Is this true? Does the ADA require me to make them all accessible?***

*The ADA establishes different requirements for existing facilities and new construction. In existing facilities where retrofitting may be expensive, the requirement to provide access through barrier removal is less than it is in new construction where accessibility can be incorporated in the initial stages of design and construction without a significant increase in cost. The requirement to remove barriers in existing buildings applies only to a private entity that owns, leases, leases to or operates a "place of public accommodation." Further, barriers must be removed only where it is "readily achievable" to do so. Readily achievable means easily accomplishable and able to be carried out without much difficulty or expense.*

# Common Questions: Readily Achievable Barrier Removal

***Is my business required to remove barriers?***

*If your business provides goods and services to the public, you are required to remove barriers if doing so is readily achievable. Such a business is called a public accommodation because it serves the public. If your business is not open to the public but is only a place of employment like a warehouse, manufacturing facility or office building, then there is no requirement to remove barriers. Such a facility is called a commercial facility. While the operator of a commercial facility is not required to remove barriers, you must comply with the ADA Standards for Accessible Design when you alter, renovate or expand your facility.*

***What is a "place of public accommodation"?***

*A place of public accommodation is a facility whose operations affect commerce and fall within at least one of the following 12 categories set out in the ADA:*

1. *Places of lodging (e.g., inns, hotels, motels) (except for owner occupied establishments renting fewer than six rooms);*
2. *Establishments serving food or drink (e.g., restaurants and bars);*
3. *Places of exhibition or entertainment (e.g., motion picture houses, theaters, concert halls, stadiums);*
4. *Places of public gathering (e.g., auditoriums, convention centers, lecture halls);*
5. *Sales or rental establishments (e.g., bakeries, grocery stores, hardware stores, shopping centers);*
6. *Service establishments (e.g., Laundromats, dry-cleaners, banks, barber shops, beauty shops, travel services, shoe repair services, funeral parlors, gas stations, offices of accountants or lawyers, pharmacies, insurance offices, professional offices of health care providers, hospitals);*
7. *Public transportation terminals, depots, or stations (not including facilities relating to air transportation);*
8. *Places of public display or collection (e.g., museums, libraries, galleries);*
9. *Places of recreation (e.g., parks, zoos, amusement parks);*
10. *Places of education (e.g., nursery schools, elementary, secondary, undergraduate, or postgraduate private schools);*
11. *Social service center establishments (e.g., day care centers, senior citizen centers, homeless shelters, food banks, adoption agencies); and*
12. *Places of exercise or recreation (e.g., gymnasiums, health spas, bowling alleys, golf courses).*

# Common Questions: Readily Achievable Barrier Removal

*I operate a restaurant that opened in 1991. The city required that the restaurant comply with the local accessibility code. Is the restaurant "grandfathered" and not required to remove barriers as required by the ADA?*

*No. A restaurant is a public accommodation and a place of public accommodation must remove barriers when it is readily achievable to do so. Although the facility may be "grandfathered" according to the local building code, the ADA does not have a provision to "grandfather" a facility. While a local building authority may not require any modifications to bring a building "up to code" until a renovation or major alteration is done, the ADA requires that a place of public accommodation remove barriers that are readily achievable even when no alterations or renovations are planned.*

*Do I, as the owner, have to pay for removing barriers?*

*Yes, but tenants and management companies also have an obligation. Any private entity who owns, leases, leases to, or operates a place of public accommodation shares in the obligation to remove barriers.*

*If I do remove barriers, is my business entitled to any tax benefit to help pay for the cost of compliance?*

*As amended in 1990, the Internal Revenue Code allows a deduction of up to $15,000 per year for expenses associated with the removal of qualified architectural and transportation barriers (Section 190). The 1990 amendment also permits eligible small businesses to receive a tax credit (Section 44) for certain costs of compliance with the ADA. An eligible small business is one whose gross receipts do not exceed $1,000,000 or whose workforce does not consist of more than 30 full-time workers. Qualifying businesses may claim a credit of up to 50 percent of eligible access expenditures that exceed $250 but do not exceed $10,250. Examples of eligible access expenditures include the necessary and reasonable costs of removing architectural, physical, communications, and transportation barriers; providing readers, interpreters, and other auxiliary aids; and acquiring or modifying equipment or devices.*

# Common Questions: Readily Achievable Barrier Removal

**How do I determine what is readily achievable?**

*"Readily achievable" means easily accomplishable and able to be carried out without much difficulty or expense. Determining if barrier removal is readily achievable is, by necessity, a case-by-case judgment. Factors to consider include:*

1. *The nature and cost of the action;*
2. *The overall financial resources of the site or sites involved; the number of persons employed at the site; the effect on expenses and resources; legitimate safety requirements necessary for safe operation, including crime prevention measures; or any other impact of the action on the operation of the site;*
3. *The geographic separateness, and the administrative or fiscal relationship of the site or sites in question to any parent corporation or entity;*

   *4) If applicable, the overall financial resources of any parent corporation or entity; the overall size of the parent corporation or entity with respect to the number of its employees; the number, type, and location of its facilities; and*

   *5) If applicable, the type of operation or operations of any parent corporation or entity, including the composition, structure, and functions of the workforce of the parent corporation or entity. If the public accommodation is a facility that is owned or operated by a parent entity that conducts operations at many different sites, you must consider the resources of both the local facility and the parent entity to determine if removal of a particular barrier is "readily achievable." The administrative and fiscal relationship between the local facility and the parent entity must also be considered in evaluating what resources are available for any particular act of barrier removal.*

**Can you tell me what barriers it will be "readily achievable" to remove?**

*The Department's regulation contains a list of 21 examples of modifications that may be readily achievable. These include installing ramps, making curb cuts in sidewalks and at entrances, repositioning telephones, adding raised markings on elevator control buttons, installing visual alarms, widening doors, installing offset hinges to widen doorways, insulating lavatory pipes under sinks, repositioning a paper towel dispenser, installing a full-length mirror, rearranging toilet partitions to increase maneuvering space or installing an accessible toilet stall. The list is not exhaustive and is only intended to be illustrative. Each of these modifications will be readily achievable in many instances, but not in all. Whether or not any of these measures is readily achievable will have to be determined on a case-by-case basis in light of the nature and cost of the barrier removal and the resources available.*

*Powered by BlueDAG*

Exhibit 1

34

# Common Questions: Readily Achievable Barrier Removal

***Does the ADA permit me to consider the effect of a modification on the operation on my business?***

*Yes. The ADA permits consideration of factors other than the initial cost of the physical removal of a barrier.*

*ILLUSTRATION: CDE convenience store determines that it would be inexpensive to remove shelves to provide access to wheelchair users throughout the store. However, this change would result in a significant loss of selling space that would have an adverse effect on its business. In this case, the removal of all the shelves is not readily achievable and, thus, is not required by the ADA. However, it may be readily achievable to remove some shelves.*

***If an area of my store is reachable only by a flight of steps, would I be required to add an elevator?***

*Usually no. A public accommodation generally would not be required to remove a barrier to physical access posed by a flight of steps, if removal would require extensive ramping or an elevator. The readily achievable standard does not require barrier removal that requires burdensome expense. Thus, where it is not readily achievable to do so, the ADA would not require a public accommodation to provide access to an area reachable only by a flight of stairs.*

***I have a portable ramp that we use for deliveries - can't I just use that?***

*Yes, you could, but only if the installation of a permanent ramp is not readily achievable. In order to promote safety, a portable ramp should have railings, a firm, stable, nonslip surface and the slope should not exceed one to twelve (one unit of rise for every twelve units horizontal distance). It should also be properly secured and staff should be trained in its safe use.*

# Common Questions: Readily Achievable Barrier Removal

***Because one of my buildings is very inaccessible, I don't know what to fix first. Is guidance available?***

*Yes. The Department recommends priorities for removing barriers in existing facilities because you may not have sufficient resources to remove all existing barriers at one time. These priorities are not mandatory. You are free to exercise discretion in determining the most effective "mix" of barrier removal measures for your facilities. The **first priority** is enabling individuals with disabilities to enter the facility. This priority on "getting through the door" recognizes that providing physical access to a facility from public sidewalks, public transportation, or parking is generally preferable to any alternative arrangements in terms of both business efficiency and the dignity of individuals with disabilities. The **second priority** is providing access to those areas where goods and services are made available to the public. For example, in a hardware store these areas would include the front desk and the retail display areas of the store. The **third priority** is providing access to restrooms (if restrooms are provided for use by customers or clients). The **fourth priority** is removing any remaining barriers, for example, lowering telephones.*

***What about my employee areas? Must I remove barriers in areas used only by employees?***

*No. The "readily achievable" obligation to remove barriers in existing facilities does not extend to areas of a facility that are used exclusively by employees. Of course, it may be necessary to remove barriers in response to a request for "reasonable accommodation" by a qualified employee or applicant as required by Title I of the ADA. For more information, contact the Equal Employment Opportunity Commission (EEOC) which enforces Title I of the ADA.*

***How can a public accommodation decide what needs to be done?***

*One effective approach is to conduct a "self-evaluation" of the facility to identify existing barriers. While not required by the ADA, a serious effort at self-assessment and consultation can save resources by identifying the most efficient means of providing required access and can diminish the threat of litigation. It serves as evidence of a good faith effort to comply with the barrier removal requirements of the ADA. This process should include consultation with individuals with disabilities or with organizations representing them and procedures for annual reevaluations.*

***If a public accommodation determines that its facilities have barriers that should be removed, but it is not readily achievable to undertake all of the modifications now, what should it do?***

*The Department recommends that a public accommodation develop an implementation plan designed to achieve compliance with the ADA's barrier removal requirements. Such a plan, if appropriately designed and executed, could serve as evidence of a good faith effort to comply with the ADA's barrier removal requirements.*

Exhibit 1
36

# Common Questions: Readily Achievable Barrier Removal

**What if I'm not able to remove barriers at this time due to my financial situation? Does that mean I'm relieved of current responsibilities?**

*No, when you can demonstrate that the removal of barriers is not readily achievable, you must make your goods and services available through alternative methods, if undertaking such methods is readily achievable. Examples of alternative methods include having clerks retrieve merchandise located on inaccessible shelves or delivering goods or services to the customers at curbside or in their homes. Of course, the obligation to remove barriers when readily achievable is a continuing one. Over time, barrier removal that initially was not readily achievable may later become so because of your changed circumstances.*

**If the obligation is continuing, do you mean there are no limits on what I must do to remove barriers?**

*No. There are limits. In removing barriers, a public accommodation does not have to exceed the level of access required under the alterations provisions contained in the Standards (or the new construction provision where the Standards do not provide specific provisions for alterations).*

*ILLUSTRATION 1: An office building that houses places of public accommodation is removing barriers in public areas. The alterations provisions of the Standards explicitly state that areas of rescue assistance are not required in buildings that are being altered. Because barrier removal is not required to exceed the alterations standard, the building owner need not establish areas of rescue assistance.*

*ILLUSTRATION 2: A grocery store has more than 5000 square feet of selling space and prior to the ADA had six inaccessible check-out aisles. Because the Standards do not contain specific provisions applicable to the alteration of check-out aisles one must look to the new construction provisions of the Standards for the upper limit of the barrier removal obligation. These provisions require only two of the six check-out aisles to be accessible. Because the store found it readily achievable in 1993 and 1994 to remove barriers and make two of check-out aisles accessible, the store has fulfilled its obligation and is not required to make more checkout aisles accessible.*

# Common Questions: Readily Achievable Barrier Removal

***What is the difference between barrier removal and alterations? Aren't they both very similar?***

*Not really. Under the ADA, barrier removal is done by a place of public accommodation to remove specific barriers that limit or prevent people with disabilities from obtaining access to the goods and services offered to the public. This is an ongoing obligation for the business that has limits determined by resources, size of the company and other factors. An alteration is replacement, renovation or addition to an element or space of a facility. Generally alterations are done to improve the function of the business, to accommodate a change or growth in services, or as part of a general renovation. The requirements for alterations are greater than those for barrier removal because the alteration is part of a larger construction or replacement effort.*

***One of the buildings that I own is a small factory with offices. Do I have to make that accessible?***

*No, commercial facilities such as factories, warehouses, and office buildings that do not contain places of public accommodation are considered "commercial facilities" and are not required to remove barriers in existing facilities. They are, however, covered by the ADA's requirements for accessible design in new construction or alterations.*

# EXHIBIT 2

Exhibit 2

39

Lexis Advance®
Research

Document:Langer v. Chavez, 2018 U.S. Dist. LEXIS 121856

---

## Langer v. Chavez, 2018 U.S. Dist. LEXIS 121856

Copy Citation

United States District Court for the Central District of California

July 20, 2018, Decided; July 20, 2018, Filed

Case No. **2:17-cv-4034-ODW-AS**

**Reporter**

**2018 U.S. Dist. LEXIS 121856 \***

CHRIS LANGER, Plaintiff, v. YOVANA CHAVEZ; DOES 1-10, Defendants.

## Core Terms

barriers, Restaurant, summary judgment, counter, state-law, inches, supplemental jurisdiction, corrected, declines, original jurisdiction, leave to amend, material fact, height, grant summary judgment, genuine dispute, parking space

**Counsel:** **[\*1]** For Chris Langer, Plaintiff: Mark D Potter ▾, Russell C Handy ▾, LEAD ATTORNEYS, Dennis Jay Price, II ▾, Phyl Grace, Raymond George Ballister, Jr ▾, Sara Gunderson ▾, Center for Disability Access, San Diego, CA.

Yobana Chavez, Erroneously Sued As Yovana Garcia, Defendant, Pro se, Los Angeles, CA.

**Judges:** OTIS D. WRIGHT, II ▾, UNITED STATES DISTRICT JUDGE.

**Opinion by:** OTIS D. WRIGHT, II ▾

## Opinion

Exhibit 2
40

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [29]**

## I. INTRODUCTION

Plaintiff Chris Langer brings this action alleging that the premises of Defendant Yovana Chavez's **1⬇**
business, La Palapa Sinaloense, has barriers to access which violate the Americans with Disabilities Act
("ADA") and the Unruh Civil Rights Act ("UCRA"). Pending before the Court is Defendant's Motion for
Summary Judgment, in which she argues that she has fully remediated the violations alleged in the
Complaint and, therefore, the Court should dismiss Plaintiff's ADA claim as moot and decline to exercise
jurisdiction over the UCRA claim. For the following reasons, the Court **GRANTS** Defendant's Motion. **2⬇**
(Mot., ECF No. 29.)

## II. BACKGROUND

Defendant is the business owner of the La Palapa Sinaloense restaurant (the 'Restaurant") located in Los
Angeles, California. (Pl.'s Statement **[*2]** of Uncontroverted Facts ("Pl.'s SUF") ¶ 1, ECF No. 35-1.) On
May 31, 2017, Plaintiff initiated this lawsuit, alleging that Defendant violated the ADA and UCRA by
failing to provide accessible parking spaces. (Compl. ¶¶ 34-35.) Plaintiff also alleged that the transaction
counter of the restaurant was not at least 36 inches in length and/or had a maximum height of 36 inches
above the floor. (*Id.* ¶¶ 36-37.)

On September 19, 2017, John Battista, a Certified Access Specialist, re-inspected the Restaurant at
Defendant's request and provided a final inspection report. (*See* Pl.'s SUF ¶ 2.) Before the re-inspection,
Battista prepared an initial report identifying various barriers to entry, including the barriers alleged in
the complaint related to the lack of accessible parking spaces and the transaction counter height. (Decl.
of John Battista ("Battista Decl.") Ex. A, ECF No. 32.) Battista's initial report also identified other barriers
and suggested corrections. (*See generally id.*) In his final inspection report, Battista opined that
Defendant completed all necessary corrections and that the Restaurant met the current State and
Federal Construction Related Accessibility Standards. (*Id., see* **[*3]** *also* Battista Decl. ¶ 6.)

Defendant moved for summary judgment on April 20, 2018. (Mot., ECF No. 29.) Plaintiff opposes the
Motion. (Opp'n, ECF No. 35.) Plaintiff disputes the fact that Defendant corrected the barriers to access
and provides a report from his own Certified Access Specialist, Janis Kent, who visited the Restaurant on
May 2, 2018. (Decl. of Janis Kent ("Kent Decl.") Ex. 6, ECF No. 35-7.) Kent acknowledges that there was
a designated accessible parking space with the correct dimensions on the property when she visited and
that both the order counter and pick-up counter were the compliant width. (*Id.* at 4.) Kent explained that
a portion of one of the counters was greater than the allowable height by one-half inch, because that
portion measured 34.5 inches. (*Id.* at 4-5.) Kent also reported that she observed other barriers at the
Restaurant that Plaintiff did not allege in the Complaint. (*See generally id.*)

In her Reply, Defendant provided evidence that a section of the cement area below the transaction
counter has been re-surfaced to ensure that all sections of the counter are no greater than 34 inches in
height. (Reply 2, ECF No. 41.) Defendant also provides evidence that the remainder of **[*4]** the barriers
to access Kent outlined in her report have been corrected. **3⬇** (*See generally id.*)

## III. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts
must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party.
*Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). A disputed fact is
"material" where the resolution of that fact might affect the outcome of the suit under the governing law,
and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for
the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d
202 (1968). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact

Exhibit 2
41

and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); **[*5]** *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Thus, the Court will grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out the material facts to which the moving party contends there is no genuine dispute. C.D. Cal. L.R. 56-1. Additionally, a party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute. C.D. Cal. 56-2. In determining any motion for summary judgment, "the Court may assume that material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the "Statement of Genuine Disputes" and (b) controverted by declaration or other written evidence files in opposition to the motion. C.D. Cal. L.R. 56-3.


**IV. DISCUSSION**


**A. ADA [*6]  Claim**

Plaintiff raises a claim for violation of Title III of the ADA, which prohibits discrimination in any place of public accommodation. *Grove v. De La Cruz*, 407 F. Supp. 2d 1126, 1130 (C.D. Cal. 2005); 42 U.S.C. § 12182. In order to establish a prima facie case for discrimination under Title III of the ADA, Plaintiff must show that (1) he or she is disabled within the meaning of the ADA; (2) Defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) Defendant denied public accommodations to Plaintiff because of his or her disability. 42 U.S.C. § 12182(a); *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). Monetary damages are not available in private suits under Title III, *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002), but the ADA gives courts the discretion to award injunctive relief, attorneys' fees, litigation expenses, and costs to the prevailing parties. *See* 42 U.S.C. § 12205; *Molski*, 481 F.3d at 730.

In his Complaint, Plaintiff alleged that he encountered two barriers, which prevented him from enjoying the Restaurant's accommodations: (1) there were no accessible parking spaces and (2) the transaction counters were higher than 36 inches above the floor and greater than 36 inches in width. (Compl. ¶¶ 34-37.) Defendant argues that because these barriers have been corrected, Plaintiff's claims are moot.

Because a plaintiff can only sue for injunctive relief in an ADA **[*7]** case, the Ninth Circuit has explained that "a defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claim." *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011); *see also Hubbard v. 7—Eleven, Inc.*, 433 F. Supp. 2d 1134, 1145 (S.D. Cal. 2006) (defendant repaired ramp slope from public sidewalk to store entrance, which was too steep, thus mooting the ADA claim).

Defendant presents evidence from Battista, a certified access specialist, who provides declaration testimony that the Restaurant's parking spaces and counter access are now in compliance. Although Plaintiff disputes that these areas are now in compliance, the only evidence he submits to rebut the current state of those alleged "barriers" is the declaration of his own certified access specialist, Kent.

Kent acknowledges that the Restaurant now how has a van accessible space with the correct dimensions. (Kent Decl. Ex. 6 at 4.) Additionally, Kent explains that the order and pick-up counters are the compliant width. (*Id.*) Kent does note that one part of the counter was 34 1/2 inches high at the time of her visit, which she opines is non-compliant. (*Id.* at 4-6.) In the Complaint, however, Plaintiff alleges that the counter is out of compliance because it was higher than 36 inches in height. **[*8]** (Compl. ¶ 36.) The Court has confirmed that the compliance standards Plaintiff relies on in the Compliant require only a maximum counter height of 36 inches. 2010 ADA Standards § 904.4.1.

Exhibit 2
42

Therefore, the Court finds that the ADA violations alleged in the Complaint have been corrected.

**B. The Court Declines to Grant Plaintiff Leave to Amend the Complaint**

Although Plaintiff raises the possibility of additional barriers at the Restaurant in his Opposition, Plaintiff has not amended his Complaint, nor requested to do so, to address these new barriers. Additionally, the deadline to hear a motion to amend the pleadings passed over a month ago on June 11, 2018. (ECF No. 26.)

The Ninth Circuit has held that in certain circumstances, a Court should construe new issues raised in opposition to a summary judgment motion as a request under Federal Rule of Civil Procedure 15(b) to belatedly amend the pleadings. *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014). "Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).

The Court finds that Plaintiff unduly delayed moving for leave to amend the Complaint. Defendant moved for summary **[\*9]** judgment on April 20, 2018, putting Plaintiff on notice of the possibility that Defendant had remediated the barriers at the Restaurant. (ECF No. 29.) However, Plaintiff should have been on notice of the potential remediation as early as January 8, 2018, when Defendant filed a "Statement of Remediation" and attached Battista's report. (ECF No. 22.) Instead of immediately investigating the state of the Restaurant, Plaintiff waited to send out its own inspector until May 2, 2018. Even then, Plaintiff would have had time to move for leave to amend before the deadline, yet Plaintiff failed to do so. The Court also finds that Defendant would suffer prejudice should Plaintiff be permitted leave to amend the Complaint. Therefore, the Court declines to grant Plaintiff leave to amend.

Because Defendant has corrected the barriers alleged in the Complaint and the Court declines to grant Plaintiff leave to amend, the Court **GRANTS** summary judgment as to Plaintiff's ADA claim.

**C. UCRA**

Defendant also moves for summary judgment as to Plaintiff's claim under the UCRA. Because the Court grants summary judgment on Plaintiff's ADA claim, the only remaining issue is whether the Court may exercise supplemental **[\*10]** jurisdiction over the pendent state-law claim.

The Court has supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy ...." 28 U.S.C. § 1367(a). The ADA claims and state-law claim share a common nucleus of operative fact and are "part of the same case or controversy;" both use identical factual allegations and violations of the ADA constitute violations of the parallel sections in the UCRA. *See* Cal. Civ. Code §§ 51(f), 54(c). Nevertheless, once the court acquires supplemental jurisdiction, it may decline to exercise it if:

(1) the claim raises a novel or complex issue of State law;

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;

(3) the district court has dismissed all claims over which it has original jurisdiction, or;

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The decision to retain jurisdiction over state-law claims is within the district court's discretion, weighing factors such as economy, convenience, fairness, and comity. *Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995).

Here, the Court granted summary judgment on the ADA claim, **[\*11]** the only claim over which it has original jurisdiction. "[I]n the usual case in which federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988).

Thus, the Court declines to exercise supplemental jurisdiction over the state-law UCRA claim, as it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(1); *see, e.g., Oliver*, 654 F.3d at 910 (finding district court did not abuse its discretion in dismissing state-law claims under

Exhibit 2

43

the UCRA and CDPA after losing original jurisdiction over ADA claim); *see also Rodgers v. Chevys Restaurants, LLC*, No. C13-03923 HRL, 2015 U.S. Dist. LEXIS 22164, 2015 WL 909763, at *4 (N.D. Cal. Feb. 24, 2015) ("In a Title III ADA action, a district court may properly decline supplemental jurisdiction over related state-law access claims once the ADA claim has been dismissed."). The Court **GRANTS** Defendant's Motion as to the UCRA claim.

### V. CONCLUSION

For the above reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment. (ECF No. 29.) The Court will issue judgment.

**IT IS SO ORDERED**.

July 20, 2018

/s/ Otis D. Wright, II ▾

**OTIS D. WRIGHT, II**

**UNITED STATES DISTRICT JUDGE**

### FINAL JUDGMENT

On May 31, 2017, Plaintiff Chris Langer initiated this Americans with **[*12]** Disabilities Act ("ADA") case against Defendant Yovana Chavez. **1⬇** (Compl., ECF No. 1.) On April 20, 2018, Defendant moved for summary judgment on all of Plaintiff's ADA claims and requested that the Court decline supplemental jurisdiction over Plaintiff's state-law claim under the Unruh Civil Rights Act. (ECF No. 29.) The Court granted Defendant's Motion in full. (ECF No. 44.)

It is therefore **ORDERED, ADJUDGED**, and **DECREED** as follows:

1. Judgment is entered for Defendant on Plaintiff's ADA claims.

2. Plaintiff shall take nothing on his ADA claims against Defendant.

3. The Court declines to exercise supplemental jurisdiction over Plaintiff's claim under the Unruh Civil Rights Act claim and **DISMISSES** that claim without prejudice.

The Court **VACATES** all dates and deadlines. The Clerk of the Court shall close the case.

**IT IS SO ORDERED**.

July 20, 2018

/s/ Otis D. Wright, II ▾

**OTIS D. WRIGHT, II**

**UNITED STATES DISTRICT JUDGE**

---

**Footnotes**

**1⬆**      Plaintiff erroneously sued Defendant as "Yobana Chavez."

Exhibit 2
44

**2** ⬆ After considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

**3** ⬆ Courts generally refuse to consider new evidence included in a reply. However, Plaintiff has not objected to Defendant's inclusion of this evidence nor moved to strike it. Ultimately, the Court finds that Defendant's original summary judgment evidence, alone, is sufficient to warrant granting the Motion.

**1** ⬆ Plaintiff erroneously sued Defendant as "Yobana Chavez."

**Content Type:** Cases

**Terms:** 2:17-cv-4034-ODW-AS

**Narrow By:** Sources: CA,Related Federal

**Date and Time:** Sep 07, 2018   06:18:45 p.m. PDT

 LexisNexis®

About LexisNexis®    Privacy Policy    Terms & Conditions    Sign Out    Copyright © 2018 LexisNexis. All rights reserved.

 RELX Group™

Exhibit 2
45